ARMCO, INC., Petitioner,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Respondent,

Natural Resources Defense Council, Inc., Intervenor.

No. 88–3070.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 15, 1988.

Decided March 15, 1989.

Christopher R. Schraff (argued), Porter, Wright, Morris & Arthur, Columbus, Ohio, for petitioner.

Lee M. Thomas, Adm. U.S. EPA Office of the Gen. Counsel, Washington, D.C., Valdas V. Adamkus, Adm. EPA, U.S. E.P.A., Chicago, Ill., David J. Kaplan (argued), Office of the U.S. Department of Justice, Environmental Defense Section, Land & Natural Resources Div., Washington, D.C., Craig Jakubowics, Office of U.S. E.P.A. Permits Div., Washington, D.C., for respondent.

Robert W. Adler, Natural Resources Defense Council, Washington, D.C., for intervenor.

Before ENGEL, Chief Judge, and WELLFORD, Circuit Judge; and THOMAS *, Senior District Judge.

WELLFORD, Circuit Judge.

Petitioner Armco, Inc. petitions this court to declare as untimely or arbitrary and capricious an October 30, 1987 letter from United States Environmental Protection Agency (USEPA) objecting to Ohio EPA's approval of removal credits for the benefit of the City of Middletown, Ohio, and Armco, the industry discharging phenol and ammonia into the waterway at Middletown. EPA and the intervenor, Natural Resources Defense Council, Inc. (NRDC), an environmental entity, contend that the only appropriate relief for Armco is to file a suit in district court compelling USEPA to promulgate regulations, which could result in setting aside the present ban on removal credits for sludge being discharged by Armco and the Middletown POTW. USEPA contends that such an action can be brought only in district court.

The Supreme Court denied certiorari review of the Third Circuit's decision of *Natural Resources Defense Council (NRDC) v. EPA*, 790 F.2d 289 (3d Cir.1986), *cert. denied*, 479 U.S. 1084, 107 S.Ct. 1285, 94 L.Ed.2d 143 (1987). This left in effect the Third Circuit's April 1986 mandate in *NRDC* that "EPA cannot, in the absence of the section 405 [sludge] regulations, authorize the issuance of removal credits under section 307(b)(1) [33 U.S.C. § 1317(b)(1)]."

790 F.2d at 314. These regulations have yet to be promulgated by USEPA.

USEPA did not and still does not recognize Ohio EPA's action approving Middletown's removal credit application, but rather claims that Congress had expressly prohibited use of removal credits after August 31, 1987. Armco contends that USEPA's October 30, 1987 objection to Ohio EPA's approval was untimely and therefore has no legal effect. In the alternative, Armco contends that USEPA's objection was arbitrary, capricious, an abuse of discretion, and contrary to law because section 406(e) of the Water Quality Act (WQA) specifically authorized Ohio EPA to approve removal credit applications before August 31, 1987, and divested USEPA of the right to reject such authority. Armco also contends that USEPA's failure to promulgate sludge regulations by August 31, 1987 precludes USEPA from prohibiting the Ohio EPA from approving removal credits.

The statute involved in this petition for review of USEPA's action is the Federal Water Pollution Control Act (FWPCA), also cited as The Clean Water Act of 1977, as amended, especially §§ 307(b) and 405, 33 U.S.C. §§ 1317(b) and 1345, and § 406 of the Water Quality Act of 1987, Pub.L. No. 100–4, 101 Stat. 7 (1987). The Water Quality Act of 1987 amended FWPCA in certain particulars. Section 406 of the Water Quality Act of 1987 establishes deadlines for USEPA to promulgate comprehensive sludge management regulations and refers to the decision of *NRDC v. USEPA*, 790 F.2d 289 (3d Cir.1986), which, in turn, addressed the sludge management requirements of § 405(d) of the FWPCA, as amended, 33 U.S.C. § 1345(d). The focus of this appeal is also upon 40 C.F.R. § 403.11 and the provisions of 40 C.F.R. § 403.7, which were amended by USEPA's November 5, 1987 final rule.

So that the reader may understand the background of the statutes in dispute and appreciate the use of shorthand initials for

---

* The Honorable William K. Thomas, United States District Court for the Northern District of Ohio, sitting by designation.

long titles or concepts involved, we set out a brief background of the Federal Removal Credits Program, the primary subject matter of this controversy. For a more detailed discussion, see *NRDC v. USEPA*, 790 F.2d 289 (3d Cir.1986), and *National Ass'n of Metal Finishers v. EPA*, 719 F.2d 624 (3d Cir.1983).

FWPCA proscribes generally the discharge of pollutants to waters of the United States unless those discharges comply with the standards specified in the Act. The FWPCA obligates the Administrator of the USEPA to promulgate regulations establishing limits on the types and amounts of pollutants discharged from various industrial, commercial, and public sources of wastewater.

FWPCA calls upon the administrator to establish effluent limitations for "direct dischargers," which are sources that discharge pollutants directly to waters of the United States. Under § 301 of the FWPCA, as amended, 33 U.S.C. § 1311, the administrator is obligated to establish effluent limitations requiring direct dischargers to employ "best practicable control technology" (BPT) by 1977 and "best available demonstrated control technology" (BAT) by 1989. Newly constructed facilities that directly discharge pollutants are obligated to comply with "new source performance standards" established pursuant to § 306 of the FWPCA, as amended, 33 U.S.C. § 1316.

Section 301(b)(1)(B) of FWPCA, 33 U.S.C. § 1311(b)(1)(B), requires that publicly owned treatment works (POTWs) which directly discharge wastewaters meet limitations requiring "secondary treatment" of all wastewaters collected from residential, commercial, and industrial customers. Middletown, Ohio is such a POTW. Direct dischargers, including POTWs, are re-

quired to obtain a National Pollutant Discharge Elimination System (NPES) permit in order to directly discharge wastewater to any waters of the United States. Under § 402 of the FWPCA, 33 U.S.C. § 1342, wastewater dischargers must comply with the FWPCA standards.

In addition to requirements *imposed* upon "direct dischargers," the FWPCA also requires that an "indirect discharger," one whose wastes are collected and treated at a POTW rather than directly discharged into waters of the United States, "pretreat" its wastewaters in order to remove any pollutant (including toxic pollutants) that "... interferes with, passes through or otherwise is incompatible with such works." *See* § 307(b)(1), FWPCA, as amended, 33 U.S.C. § 1317(b)(1).[1]

Section 307(b) of FWPCA, 33 U.S.C. § 1317(b), provides for the administrator to establish "pretreatment standards for introduction of pollutants into treatment works ... which are publicly owned for those pollutants which are determined not to be susceptible to treatment by such treatment works or which would interfere with the operation of such treatment works." Pretreatment standards for iron and steelmaking facilities, such as those of Armco, were promulgated by USEPA in final form on May 27, 1982 and are set forth in 40 C.F.R. Part 420.

In order to avoid redundant treatment of wastewaters passing from an industrial user through a POTW prior to discharge to surface waters, Congress in 1977 amended § 307(b)(1) of FWPCA to set up a procedure through which one who discharged indirectly could obtain a removal "credit" reflecting the amount of pollutants removed from its wastewaters as a result of treatment by a POTW.[2]

---

1. An extensive description of the pretreatment program is set forth in *NRDC v. EPA*, 790 F.2d 289 (3d Cir.1986).

2. Section 307(b)(1) of the FWPCA, 33 U.S.C. § 1317(b)(1), provides that:

   If, in the case of any toxic pollutant under subsection (a) of this section introduced by a source into publicly owned treatment works, the treatment by such works removes all or

any part of such toxic pollutant and the discharge from such works does not violate the effluent limitation or standard which would be applicable to such toxic pollutant if it were discharged by such source other than through a publicly owned treatment works, and does not prevent sludge use or disposal by such works in accordance with section 1345 of this title, then the pretreatment requirements for the sources actually discharging such toxic

USEPA argues that Armco has mischaracterized the issues in this petition for review. According to USEPA, the Third Circuit's decision in *NRDC v. EPA* and Congress' purported nullification through § 406(e) of the Water Quality Act of Ohio EPA's approval of Middletown's application for removal credit authority have closed the issue. As a result, USEPA contends that Armco's challenge to USEPA's October 30, 1987 letter notifying Ohio EPA that under existing law removal credits are unavailable should be dismissed as moot. USEPA also asserts that this court lacks jurisdiction either to review USEPA's public notice that removal credits are unavailable or to compel USEPA to promulgate sludge regulations. Finally, USEPA contends that, even if this court could or does review USEPA's statements concerning the unavailability of removal credits, these statements are accurate and valid, and that Armco is not entitled to any of the relief it seeks.

Armco seeks to obtain removal credits for two pollutants, total phenols and ammonia-n, which are discharged in the wastewaters from Armco's steel-making coke plant in Middletown, Ohio. Specifically, Armco petitions this court to review USEPA's letter of October 30, 1987 as an agency action; to review USEPA's failure to formulate new regulations, or agency inaction; and to set aside USEPA's indefinite ban upon the authorization of removal credits until such time as USEPA promulgates comprehensive sludge regulations as set out in its November 5, 1987 *Federal Register* notice.[3]

The Clean Water Act requires USEPA to establish effluent limitations for "direct dischargers," such as industrial sources and POTWs that discharge pollutants directly into navigable waters. Different restrictions are imposed on "indirect dischar-

gers," which discharge their pollutants into POTWs rather than directly into navigable waters. Such discharges into POTWs carry the potential to cause serious problems. First, the discharges may interfere with a POTW's operation by causing it to treat wastes and sewage inadequately. Second, the pollutants may pass through the POTW into navigable waters if they are inadequately treated. Finally, they may settle into and contaminate the sludges produced by a POTW, causing potentially serious sludge disposal problems. Congress addressed these problems with sections 307(b)-(d) of the Act, 33 U.S.C. § 1317(b)-(d), which direct USEPA to establish pretreatment standards "to prevent the discharge of any pollutant through [POTWs]." 33 U.S.C. § 1317(b)(1). Pretreatment standards regulations applicable to this case limit the amount of total phenols and ammonia-n that a steel-making coke plant may discharge to a POTW on a daily basis and a consecutive 30–day average basis.

State permit programs, such as these of Ohio, may be submitted to the USEPA Administrator under section 402(h) of the Act. (33 U.S.C. § 1342(h)). USEPA, however, retains the authority to review the operation of a state's permit program and may withdraw approval of a state program that is not being administered according to the conditions of 33 U.S.C. § 1342(b). USEPA has authorized the State of Ohio Environmental Protection Agency (Ohio EPA) to administer Ohio's permit program.

Congress amended the pretreatment provision of the FWPCA in 1977 to establish a discretionary program for POTWs to grant removal credits to their indirect dischargers. Clean Water Act § 307(b)(1), 33 U.S.C. § 1317(b)(1). A POTW's removal credit authority enables a POTW to grant to an

pollutant into such publicly owned treatment works may be revised by the owner or operator or of such works to reflect the removal of such toxic pollutant by such works.

3. Promulgation of this rule does not in itself entitle EPA to authorize removal credits. EPA must comply with the Third Circuit's ruling requiring a more comprehensive set of sludge regulations under section 405 of the

act as a precondition for granting removal credits. EPA is working to comply with that ruling and will be proposing an extensive set of sludge guidelines under the authority of section 405(d). Note that section 406(e) of the Water Quality Act of 1987 provides that the Third Circuit decision as to sludge was stayed, but only until August 31, 1987.... 52 Fed.Reg. at 42, 434–35.

indirect discharger a "credit"—in the form of a less stringent wastewater pretreatment standard—to the extent that the POTW removes certain regulated pollutants from the indirect discharger's waste stream. These removal credits may be awarded only if (1) the POTW "removes all or any part of such toxic pollutant," (2) the POTW's ultimate discharge would "not violate that effluent limitation, or standard which could be applicable to such toxic pollutant if it were discharged" directly rather than through a POTW, and (3) the POTW's discharge would "not prevent sludge use or disposal by such [POTW] in accordance with section 1345 of this title, 33 U.S.C.A. § 1345 (West Supp.1988)...."

In section 406(e) of the Water Quality Act, Congress provided deadlines for the promulgation of sludge regulations, which are to govern the potential use and mode of disposal of sewage sludge and the identification of those toxic pollutants and their concentrations that would prevent such use and disposal. Thus, Congress confirmed that removal credit authority to relax pretreatment standards is available only under certain limited conditions if the sludge from POTWs meets the standards established in the regulations under section 405(d) of the Clean Water Act. This precaution ensures that disposal of sludge from POTWs would not be contaminated by the added pollutant that POTWs receive when pretreatment standards are relaxed. *See NRDC v. EPA*, 790 F.2d 289, 311–12 (3d Cir.1986), *cert. denied*, 479 U.S. 1084, 107 S.Ct. 1285, 94 L.Ed.2d 143 (1987).

EPA amended its removal credit regulations in 1981. 46 Fed.Reg. 9404 (Jan. 28, 1981). These amended regulations were upheld over challenges in *National Association of Metal Finishers v. EPA*, 719 F.2d 624, 646–50 (3d Cir.1983), *rev'd in nonrelevant part sub nom. Chemical Manufacturers Ass'n v. NRDC*, 470 U.S. 116, 105 S.Ct. 1102, 84 L.Ed.2d 90 (1985). EPA amended the regulations again in 1984, making removal credits easier to obtain. 49 Fed.Reg. 31, 212 (Aug. 3, 1984) (codified

at 40 C.F.R. § 403.7). *NRDC v. EPA*, however, overturned the 1984 amendments in part because the court believed the EPA could not "put into effect a relaxed removal credit rule when the sludge regulations that are a precondition for the issuance of such credits have not been promulgated." *NRDC v. EPA*, 790 F.2d 289, 292 (3d Cir. 1986). Regarding the issuance of sludge regulations required under FWPCA section 405(d), the court concluded that EPA had not met "the statute's command for a comprehensive framework to regulate the disposal and utilization of sludge...." *Id.* at 314. Accordingly, the court held that "EPA cannot, in the absence of section 405 regulations, authorize the issuance of removal credits under section 307(b)(1)." *Id.*

Ohio adopted a program for water pollution control and for enforcement of FWPCA standards with respect to POTWs (Ohio Rev.Code § 6111.03). The USEPA authorized Ohio in 1974 to administer the NPES program within that state.[4] By agreement in 1983, USEPA gave Ohio authority to review and approve modifications of pretreatment standards "to reflect removal of pollutants by a POTW and enforcing related conditions in the municipal NPES Permit." (Trans. (e) 1983 Addendum; see Armco's brief at 12).

That same agreement, however, provided that "USEPA will overview and approve State pretreatment program operations consistent with 40 C.F.R. § 403 regulations." The 40 C.F.R. § 403 regulations are applicable to requests for removal credit authorization by a POTW. 40 C.F.R. § 403.7(e)(3). Ohio has established a procedure for applications for removal credits followed in this case by Armco and Middletown, and once such an application is received, Ohio EPA has 180 days from the date of public notice to act upon the application. Armco concedes that "USEPA has the authority to object to any application for authorization to grant removal credits." Armco's brief at 14. Armco contends, however, that there is a 30 day time limitation

---

4. Section 402(b) of FWPCA permits a state to apply to USEPA to enforce its NPES program if

it meets federal standards.

by agreement between Ohio and USEPA to object to Ohio EPA's approval of a removal credit application. No such objection was made by USEPA within thirty days.

On January 22, 1987, Ohio EPA issued public notice of its intent to approve Middletown's application for removal credits and a copy was furnished USEPA, which requested additional time to consider the matter. On March 14, 1987, the Ohio EPA notified Middletown that the effect of *NRDC v. EPA* prevented its approval of removal credits because they were "no longer available." Armco appealed this Ohio EPA decision.

As a consequence of Armco's appeal, Ohio EPA determined that removal credit applications could, in fact, be approved prior to August 31, 1987, and four days before that deadline approved Middletown's application with respect to ammonia and phenol. At or about the time of Ohio EPA's August 28, 1987 approval, USEPA's regional office informed Armco by letter once again that removal credits were no longer available. USEPA then, on October 30, 1987, wrote Ohio EPA that the former did not recognize the approval given for the removal credits in dispute and advised further that Middletown had no authority to modify pretreatment standards.[5] This was followed by the November 5, 1987 Federal Register notice which has been discussed in footnote 3. 40 C.F.R. § 403.7.

Armco points out in its brief that both phenol and ammonia are biodegradable; that phenol is removed from Armco's wastewaters by biological oxidation, and that "only trace amounts have ever been found in Middletown's POTW's sludge." Armco's brief at 22. Ammonia is removed through nitrification, and Armco claims this element "makes the sludge desirable for use as a fertilizer or soil conditioner." Armco's brief at 22. Thus, Armco claims these facts distinguish the case from *NRDC v. EPA.*

Armco also contends that USEPA may not "indefinitely delay its statutory obli-gation to promulgate comprehensive sludge management regulations or to further delay the approval of removal credits." Armco's brief at 23. USEPA has not, as of the date of oral argument, some fifteen months after August 1987, proposed any comprehensive sludge management regulations, the effect of which, if its position taken in this case is correct, would continue to delay approval of any removal credits not only in this case to the probable detriment of Armco, but also for any other similarly situated party in the United States.

We do not reach the question raised by intervenor-appellant, NRDC, that USEPA has no authority to issue removal credits for ammonia because it is not classified as a "toxic" substance in 33 U.S.C. § 1311(b)(2)(C).

### 1. *Jurisdiction*

■ Jurisdiction lies under the FWPCA's "citizen suit" provision to bring a suit against the United States for certain violations, and against "the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator." 33 U.S.C. § 1365(a)(2).

We do not have jurisdiction for claims such as the one presented in this case to compel agency action under FWPCA and the Water Quality Act. This legislation, rather, "confers jurisdiction on the federal district courts, not courts of appeal[s], to review any action 'where there is alleged a failure of the Administration to perform any act or duty under this Act which is not discretionary.'" *Trustees for Alaska v. EPA,* 749 F.2d 549, 558 (9th Cir.1984); *Pennsylvania v. EPA,* 618 F.2d 991, 995–96 (3d Cir.1980). We deem the issuance of the sludge removal regulations to be non-discretionary functions of USEPA. They are to be issued, and, at oral argument before this court, USEPA acknowledged its non-discretionary responsibility in this regard. We are advised, moreover, that sep-

---

**5.** Middletown's POTW had accepted and treated wastewater from Armco since 1976, making substantial improvements to its system to acco-modate Armco's waste from its coke plant. Armco contributed substantially to this expense.

arate actions have already been filed in federal district courts seeking relief by reason of USEPA's non-issuance of regulations by August 31, 1987.[6]

Limited jurisdiction in the courts of appeals is set out at 33 U.S.C. § 1369(b)(1) (West Supp.1988):

> Review of the Administrator's action (A) in promulgating any standard of performance under section 1316 of this title, (B) in making any determination pursuant to section 1316(b)(1)(C) of this title, (C) in promulgating any effluent standard, prohibition, or pretreatment standard under section 1317 of this title, (D) in making any determination as to a State permit program submitted under section 1342(b) of this title, (E) in approving or promulgating any effluent limitation or other limitation under section 1311, 1312, 1316, or 1345 of this title, (F) in issuing or denying any permit under section 1342 of this title, and (G) in promulgating any individual control strategy under section 1314(1) of this title, may be had by any interested person in the Circuit Court of Appeals of the United States for the Federal judicial district in which such person resides or transacts business which is directly affected by such action upon application by such person.

Jurisdiction in this court under § 509(b)(1) of the Act, 33 U.S.C. § 1369(b)(1), comes about when there is "action" by USEPA to promulgate any "effluent standard, prohibition or pretreatment standard under section 307." No such action by USEPA has been taken in this case; rather, the USEPA acted to recognize what the Third Circuit had required in *NRDC v. EPA*, and this requirement became final upon denial of certiorari in that case by the Supreme Court. USEPA consistently advised Ohio EPA, Armco, and Middletown that no removal credit existed after August 31, 1987.

We deem Armco's challenge to USEPA's Federal Register notice dated November 5, 1987[7] to be an attempt to by-pass original district court jurisdiction in this case. The Federal Register notice in question and USEPA's letter to Ohio EPA simply reflect the agency's recognition of the status of removal credits pending issuance of the new sludge regulations as a consequence of court action in *NRDC v. EPA*. We do not construe *Sierra Club v. Thomas*, 828 F.2d 783 (D.C.Cir.1987), as mandating jurisdiction in this court over this type of claim. If there were doubt as to whether original jurisdiction to challenge USEPA's inaction as well as the preamble set out in the November 5, 1987 *Federal Register* notice lay in the district court, we would resolve that doubt in favor of district court jurisdiction. The district court is equipped for hearings and to take evidence as to when the new sludge regulations will be issued and why they have not been issued heretofore. The district court is the proper court to consider whether mandamus or other extraordinary relief is appropriate and under what circumstances or conditions mandamus would be made available.

Finally, even if we deemed original jurisdiction to be in this court under the circumstances, we would find the statement in USEPA's November 5, 1987 *Federal Register* notice and the October 30, 1987 letter to Ohio EPA to be correct interpretations of the law following *NRDC v. EPA* for the reasons hereinafter indicated.

## 2. *Section 406(e) of the Water Quality Act*

■ On February 4, 1987, Congress responded to the *NRDC* decision in § 406(e)

---

**6.** In *Chicago Association of Commerce v. Thomas, Adm. of EPA*, No. 87–C–6353 (N.D.Ill. Oct. 28, 1987) [1987 WL 19166] the district court found that it had jurisdiction to consider an action by an industry group of indirect dischargers seeking to mandate EPA action on removal credit applications.

**7.** Armco challenges the preamble set out in 52 Fed.Reg. 42,435 (styled "General Pretreatment Regulations for Existing and New Sources), 40 C.F.R. § 403.7:

> [p]romulgation of this rule does not in itself entitle EPA to authorize removal credits. EPA must still comply with the Third Circuit's ruling requiring a more comprehensive set of sludge regulations under section 405 of the Act as a precondition for granting removal credits.

of the Water Quality Act, effectively translating that decision into law but also passing a temporary stay of the *NRDC* holding for POTWs that fall into one or both of two categories:

[t]he part of the decision of Natural Resources Defense Council, Inc. v. U.S. Environmental Protection Agency, *[790 F.2d 289] (3d Cir.1986), which addresses section 405(d) of the Federal Water Pollution Control Act [Clear Water Act] is stayed until August 31, 1987, with respect to—*

(1) those [POTWs] the owner or operator of which received authority to revise pretreatment requirements under section 307(b)(1) of such Act before the date of the enactment of this section, and

(2) those publicly owned treatment works the owner or operator of which has submitted an application for authority to revise pretreatment requirements under section 307(b)(1) which application is pending on such date of enactment and is approved before August 31, 1987.

The Administrator shall not authorize any other removal credits under such Act until the Administrator issues the regulations required by paragraph (2)(A)(ii) of section 405(d) of such Act, as amended by subsection (a) of this section.

Section 406(e); 33 U.S.C.A. § 1345 note (West Supp.1988).

Armco contends that it falls within the parameters of § 406(e)(2) because Middletown had a removal credit application pending before § 406(e) came into effect, and that its pending application was approved by Ohio EPA prior to August 31, 1987. It therefore contends that its removal credit was not terminated on August 31, 1987, but rather remains in full force and effect. USEPA responds that the meaning and effect of § 406(e) is to stay the effect of the ban imposed by the Court in *NRDC v. EPA* only until August 31, 1987, when it was contemplated new sludge management regulations would be issued by USEPA. USEPA contends that Congress, in 1987, clearly meant to stay NRDC's ban on removal credits in certain limited situations, and then only until August 31, 1987,[8] and that except for the narrow stay, removal credits are precluded until USEPA issues the regulations called for in § 405(d) of the FWPCA, ¶ (2)(A)(ii). This is by virtue of the court decision in *NRDC* which has not otherwise been disturbed by Congress.

It seems fairly clear that this is what Congress intended by its enactment of § 406(e). We believe this interpretation to be supported by the legislative history of § 406(e). *See* H. Conf.Rep. No. 1004, 99th Cong.2d Sess. 161, Oct. 15, 1986, accompanying S.1128, U.S.Code Cong. & Admin. News 1987, p. 5, *reprinted in* 132 Cong. Rec. H. 10532, 10, 577 (daily ed. Oct. 15, 1986) and 133 Cong.Rec. H. 131, H. 142, and the comments of Senator Stafford, a sponsor of the bill and a joint conferee. 132 Cong.Rec. S. 16424, 16,427 (daily ed. Oct. 16, 1986, R.D. 146).[9]

---

**8.** As a second position, USEPA asserts that Armco does not qualify under § 406(e)(2) in any event because prior to August 31, 1987, it has not been demonstrated that Middletown "ever issued removal credits for Armco's use", USEPA's brief at 30 n. 17, and thus Armco never received the removal credits sought. It is unnecessary to reach or assess this position of USEPA.

**9.** In part, Senator Stafford commented:
The bill includes a provision to prevent temporary inequities with respect to these industrial users and POTW's. It stays that part of the court's decision which addresses section 405(d) of the act until August 31, 1987, for these approved or pending applications only. This will give EPA adequate time to correct its failure to issue the necessary sludge regulations. It will also allow these POTW's to

grant removal credits, assuming they meet all other criteria for credits. It is important to note that the bill does not stay any other part of the court's decision. In other words, these 12 POTW's must meet the applicable parts of the court's decision on consistent removal, combined sewer overflows, and so forth to continue to grant credits. In addition, EPA must revise the permits for these POTW's to incorporate the sludge criteria required by subsection (d)(4). Likewise, EPA may approve the 14 pending removal credit applications under the same criteria and subject to the same permit conditions mandated by subsection (d)(4).
Interim removal credit authority for these 26 POTW's may not extend beyond August 31, 1987, nor may EPA approve applications for removal credit authority from any other POTW's or for any additional pollutants not

Even in a case of doubt about the meaning of the statute, courts give deference to the interpretation offered by the agency charged with carrying out or enforcing the statute in question if it is a reasonable, not the *only* reasonable, interpretation. "The question is whether the agency's answer is based on a *permissible* construction of the statute." *Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984) (emphasis added). *See also EPA v. National Crushed Stone Ass'n*, 449 U.S. 64, 83, 101 S.Ct. 295, 307, 66 L.Ed.2d 268 (1980), and *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 106 S.Ct. 455, 88 L.Ed.2d 419 (1985). At the time this question was raised by Armco by its petition to review in January of 1988, only a few months had passed beyond the August 31, 1987 date for promulgating new regulations. Deciding the intent of Congress by its enactment of § 406(e) in light of the entire statutory scheme and the effect of *NRDC v. EPA,* we defer not only to what we perceive is a permissible interpretation by USEPA that Congress stayed the judicial ban on credit removals only through August 31, 1987, but also to the language of § 406(e) itself. The judicial ban precluded or nullified issuance or use of such credit removals until requisite sludge regulations were issued under § 307(b)(1). It is for Congress, if it desires to change the effect of the present ban on removal credits because of the delay by USEPA in the issuance of such sludge regulations, to provide the remedy that Armco seeks. It may well be that Congress never expected USEPA to take as long as it has in issuing these regulations or that there would be as much as a year and a half delay now in prospect beyond the contemplated time when these regulations were to be issued.

*NRDC v. EPA* made it clear that USEPA "cannot, in the *absence of section 405 regulations* [sludge management regulations] authorize the issuance of removal credits."

790 F.2d at 314 (emphasis added). Ohio EPA cannot do what USEPA could not do.

Our holding in this respect concerning the effect of § 406(e) is a somewhat reluctant one because of the continuing USEPA failure to issue these regulations. Armco claims to have invested and expended large sums to establish a combined waste treatment scheme with Middletown through the anticipated use of removal credits; that it has gone to considerable expense beyond normal user charges to assure treatment by a POTW of its waste; and that it has energetically pursued, and that Middletown obtained approval of, a combined removal credit proposal from Ohio. We are further aware that Armco may incur major additional expenses if it has to install additional control systems to comply with categorical pretreatment standards because of the unavailability of credit removals.[10] *NRDC v. USEPA* involved a direct challenge to USEPA's 1984 removal credit regulations under FWPCA. Removal credits were first authorized by the 1977 Clean Water Act, which "strengthened the controls over toxic pollutants in several ways", and "codified the toxics consent decree issued by the DC for the D.C." *Id.* at 293.

We would hold that under § 406(e), USEPA cannot authorize removal credits under § 307(b)(1) after August 31, 1987.

**3. *Does Armco have a "vested" and "equitable" right to the removal credit?***

Assuming that Armco had in fact received a removal credit from Ohio EPA prior to August 31, 1987, and that USEPA failed to note its objection to that action within thirty days as the agreement with Ohio EPA required, we deem this immaterial in light of our interpretation of *NRDC v. EPA* and the effect of the limited stay provisions of § 406(e). We tend to agree with USEPA's argument that had Congress not deemed *NRDC v. EPA* to invalidate all removal credits, including previously issued ones, Congress would not have

---

covered by the approved or pending applications.

**10.** Armco asserts that installation of additional pollution control equipment in this respect

would require a capital cost of $6,000,000 plus annual operation and maintenance expense of $2,000,000 "to achieve the same level and degree of treatment which currently is being provided."

needed to provide a stay until August 31, 1987 expressly for POTW operators that had already "received authority to revise pretreatment requirements under section 107(b)(1)" of FWPCA. 40 C.F.R. § 406(e)(1). The *NRDC* preclusion, then, applied to preexisting credit removals, to those pending under § 406(e)(2), and to those under consideration after August 31, 1987, until new sludge removal regulations were issued and satisfied, a precondition for valid operation under a removal credit plan.

We conclude that the action of the *NRDC* Court and the subsequent action of Congress in granting a limited stay from the effect of this judicial law does not deprive Armco of a vested right, particularly since Ohio EPA, *before* issuing the removal credit in controversy, was fully aware of USEPA's position that no effective credit removal could exist beyond August 31, 1987, until new sludge regulations would issue.

We would not take into account in reaching our decision, as heretofore stated, the substantial equitable claims advanced by Armco. They are addressed to the merits and philosophy of the entire FWPCA and Water Quality Act legislation and program. Again, it is for Congress to state when, how, and under what circumstances a discharger of pollutants may have to pretreat effluents and sludge that may be emitted from a manufacturing process. Delay in the promulgation of regulations alone in this statutory scheme is not a basis to ignore the effects of *NRDC v. EPA* and the effect of § 406(e) and § 307(b)(1).

We have discussed the factual background of this case at some length because of the complexity of the law and the importance of the issues now before us. We have concluded that we do not have original jurisdiction over the issues in this case. In order to prevent any additional unnecessary delay in the resolution of these issues, we have also indicated, in dicta, how we would interpret the statutes involved were we to assert jurisdiction.

Accordingly, we DISMISS the petition for review on jurisdictional grounds.

ENGEL, Chief Judge, concurring.

I fully concur in section I of Judge Wellford's excellent opinion concluding that we are without jurisdiction to hear this petition for review. Having held as much, I refrain from joining in the remainder of the opinion, not because of disagreement with its content but because, having concluded that we have no jurisdiction over the controversy at this stage, I am uncomfortable in joining in comments which, while they may be well borne out ultimately by later developments, are essentially dicta at this point as the majority opinion acknowledges.