**ESTATE OF Melvin RITTER, Deceased, by Jonnie Mae RITTER, Personal Representative, Plaintiff–Appellant,**

**v.**

**UNIVERSITY OF MICHIGAN, University of Michigan Hospital, State of Michigan, Board of Regents, Defendants–Appellees.**

**No. 87–1691.**

United States Court of Appeals, Sixth Circuit.

Argued April 28, 1988.

Decided July 14, 1988.

Sheryl R. Lederman, Thurswell, Chayet & Weiner, Cyril V. Weiner, Lisa Wunder

(argued), Southfield, Mich., for plaintiff-appellant.

Robert G. Kamenec (argued), Richard D. O'Conner, Detroit, Mich., for defendants-appellees.

Before KRUPANSKY and BOGGS, Circuit Judges, and BROWN, Senior Circuit Judge.

BAILEY BROWN, Senior Circuit Judge.

This is an appeal from a grant of summary judgment for defendant Board of Regents of the University of Michigan and dismissal of plaintiff's case by the district court on the ground that the law upon which plaintiff relied did not create a right to monetary relief for which plaintiff sued. We conclude that, whether or not the disposition by the court on this ground was correct, under the eleventh amendment the federal district court had no jurisdiction. Accordingly, we vacate and remand for further proceedings consistent with this opinion.

I

This action was brought in the Court of Claims of the State of Michigan [1] by Jonnie Mae Ritter, as personal representative of her deceased husband, Melvin Ritter, for money damages against the University of Michigan, University of Michigan Hospital, State of Michigan, and the Board of Regents of the University of Michigan.[2] In the complaint, plaintiff alleged that Melvin Ritter, an "intravenous drug abuser," was on March 17, 1984, admitted to the emergency room of the Northwest General Hospital with a history of aortic valve replacement and with indications of infective endocarditis. On that day "a determination was made that the patient should be transferred to another facility for more vigorous care." However, the Detroit Osteopathic Hospital, Wayne County General Hospital, Henry Ford Hospital and the University of Michigan Hospital refused to accept Ritter because he was an "intravenous drug abuser and because he had no medical insurance." It was further alleged that Ritter needed heart surgery and that later, on March 28, 1984, he was actually admitted to Henry Ford Hospital where surgery was done and that he died soon thereafter. It was alleged that the defendants who were sued in this case owed Ritter a patient-physician duty and a duty as a beneficiary of a contract between these defendants, which duty was breached by them, causing his death.[3] It was further alleged that the defendants were liable to plaintiff under 42 U.S.C. section 1983 and also because the failure to accept Ritter as a patient violated a duty under "Public Health and Welfare Title 42, U.S.C., the Hill–Burton Act, Medicare and State Welfare" and under the Michigan Hospital Licensing Act and regulations of the Michigan Department of Health.[4]

The Board of Regents, by petition, removed the case to the United States District Court for the Eastern District of Michigan, Southern Division, on the basis of federal question jurisdiction.[5]

The Board of Regents then moved for summary judgment. In response to this

1. The Michigan Court of Claims is created and governed by Mich.Comp.Laws Ann. §§ 600.-6401–.6475

2. Service of process was had only on the Board of Regents, and the others named as defendants in this case have since been dismissed. There are no appeals as to these dismissals.

3. It appears that plaintiff also sued the other hospitals in a Michigan circuit court, the suit was dismissed, and plaintiff has appealed to the Michigan Court of Appeals.

4. Although the complaint alleged that the "defendant Hospital was a Michigan corporation," it was never served as such, and it appears to be conceded that the defendant Board of Regents *is,* under Michigan law, as a body corporate, the "University of Michigan" which operates the University Hospital in Ann Arbor in connection with its Medical School.

5. The removal petition actually cites 28 U.S.C. § 1332, *the diversity jurisdiction provision,* as the basis for removal. However, it is obvious that the Board of Regents intended to rely on § 1331, and it is undisputed that the case was removed on the basis of federal question jurisdiction.

motion, plaintiff, in addition to relying on the theories of recovery set out in her complaint, moved the court to be allowed to amend her complaint to allege that Melvin Ritter, as a drug abuser, was a handicapped person and to allege discrimination under section 504 of the Rehabilitation Act (29 U.S.C. section 794), under 42 U.S.C. section 290ee–2 (prohibiting discrimination against drug abusers in admission to hospitals), and under 42 U.S.C. section 1983 for violation of rights created by section 504 of the Rehabilitation Act and 42 U.S.C. section 290ee–2. The district court then granted the motion of the Board of Regents for summary judgment, and in doing so, ruled that the statutes on which plaintiff relied in her motion to amend her complaint, as well as the other theories for recovery alleged by her, could not be a basis for a claim for money damages against the Board.

Plaintiff then appealed. At oral argument in this court, we pointed out that, while the Board had contended in the district court that it was immune from liability under Michigan law with respect to the plaintiff's claims asserted under that law, it had not contended that it had immunity under the eleventh amendment to the Constitution with respect to jurisdiction in the federal court. This court further pointed out that, if the eleventh amendment is applicable and the Board had not consented to being sued in federal court, the district court had no jurisdiction, that this would be the proper basis for dismissal of the case, and that it would not be necessary for this court to rule on the district court's determination that plaintiff could not recover retroactive monetary relief against the Board on the theories relied upon by plaintiff. We also invited the attention of counsel to the decision in *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985), in which the Court held that by receipt of federal funds the defendant state hospital had not waived its eleventh amendment immunity to an action under section 504 of the Rehabilitation Act

for monetary relief for alleged discrimination against plaintiff because of his handicap and that, by the enactment of section 504, Congress had not abrogated the state's constitutional immunity.[6] We requested counsel to file supplemental briefs on the question whether the district court was devoid of jurisdiction because of the applicability of the eleventh amendment.

The Board has responded by asserting the eleventh amendment defense. In her supplemental brief, plaintiff makes two arguments that the eleventh amendment did not deprive the district court of jurisdiction: (1) that the Board is not a state agency so that the eleventh amendment does not apply to it, and (2) that, by removing this case from the Michigan court of claims to a federal district court and in not raising the eleventh amendment defense theretofore, the Board of Regents waived any eleventh amendment immunity that it might have had. The plaintiff further contends that, if this court cannot, on the present record, conclude that the eleventh amendment is inapplicable to the Board, we should remand to the district court for further development of the record as to the status of the Board. We conclude that, based on the present record, the Board of Regents unquestionably is a state agency to which the amendment applies and that it did not waive its eleventh amendment immunity by removing this cause to the district court and by its prior failure to raise the defense.

## II

### A. Applicability of eleventh amendment

While the question whether the eleventh amendment is applicable here is ultimately one of federal law, we must consider the position of the Board of Regents under state law in making the determination. *Long v. Richardson*, 525 F.2d 74 (6th Cir. 1975).

Under article 8, section 5 of the Michigan Constitution the "regents of the University

---

6. We also noted that while the Congress had, by the enactment of 42 U.S.C. § 2000d–7, provided that the eleventh amendment defense was abrogated with respect to violations of § 504 of the

Rehabilitation Act (29 U.S.C. § 794), the provision was made applicable only to violations occurring *after* October 21, 1986.

of Michigan ... shall constitute a body corporate known as the Regents of the University of Michigan" and, under section 4, "[t]he legislature shall appropriate moneys to maintain the University of Michigan" and "shall be given an annual accounting of all income and expenditures" of the university. Under Mich.Comp.Laws Ann. section 390.8, the university is required to maintain a department of medicine.

Without question, if this case had been litigated in the judicial system of the State of Michigan, it would have been required to be litigated in the court of claims, where it was filed, as a claim against the state for retroactive monetary relief. As stated in *Sprik v. Regents of the Univ. of Michigan*, 43 Mich.App. 178, 184, 204 N.W.2d 62, 65 (1972) (citations omitted), *aff'd* 390 Mich. 84, 210 N.W.2d 332 (1973): "The Court of Claims has exclusive jurisdiction over claims against the State. As the University of Michigan is a State institution, this includes claims against the Regents."

In *Fox v. Board of Regents of the Univ. of Michigan*, 375 Mich. 238, 134 N.W.2d 146 (1965), an action for money damages was filed in a Michigan circuit court against the Board of Regents for alleged malpractice in the University of Michigan hospital. It was held that the court had no jurisdiction and that jurisdiction was limited to the court of claims as an action against the state or state agency. On the other hand, jurisdiction of an action for monetary relief against a community college in Michigan was properly laid in a state circuit court, not in a state court of claims. The community college was not a state agency because it was created by local vote, not by the constitution or legislative act. *Doan v. Kellogg Community College*, 80 Mich.App. 316, 263 N.W.2d 357 (1977).

In *Taylor v. Auditor General*, 360 Mich. 146, 150, 103 N.W.2d 769, 771 (1960), it was held that the court of claims was created

"for the purpose of hearing and determining 'all claims and demands, liquidated and unliquidated, *ex contractu* and *ex delictu*, against the state,'" (quoting *Manion v. State Highway Comm'r*, 303 Mich. 1, 20, 5 N.W.2d 527, 528 (1942)).

Pursuant to Mich.Comp.Laws Ann. section 600.6458, if a judgment is obtained in the court of claims against the "state, or any ... board, ... arm or agency thereof," the court must determine and specify in the judgment the one from whose appropriation the judgment shall be paid and the judgment will be paid from the "unencumbered appropriation of the [designated] ... board, ... arm or agency." Moreover, the statute provides that if funds are not available in the designated unencumbered appropriation to satisfy the judgment, the auditor general will instruct the clerk of the court to issue a voucher against an appropriation made by the legislature for payment of judgment claims. If funds to pay the judgment are not available in such an appropriation, this fact shall be reported to the legislature at the next session and the judgment will be paid when the money is available. Accordingly, any judgment obtained against the Board of Regents in the court of claims would be paid out of the state treasury.

Moreover, it appears that a judgment for retroactive monetary relief against the Board in a federal court would likewise be paid out of the state treasury. This would follow if effect is given to Mich.Comp.Laws Ann. section 600.6458, discussed above, which expressly provides that the judgment in the instant case would be paid out of state treasury if this case had remained in and the judgment obtained in the state court of claims. But more to the point, as was held in *Ewing v. Board of Regents of the Univ. of Michigan*, 552 F.Supp. 881, 883 n. 5 (E.D.Mich.1982), under Mich.Comp. Laws Ann. section 600.6095, a judgment in this case in federal court against the Board would be paid out of the state treasury.[7]

---

7. Mich.Comp.Laws Ann. § 600.6095 provides: "When any judgment or decree is obtained against any corporate body ... now or hereafter having charge or control of any state institution, the amount shall be included and collected in the state tax and paid to the person entitled thereto."

Turning now to federal law in resolving the question whether the Board of Regents is entitled to eleventh amendment immunity to an action in federal court to recover retroactive monetary relief,[8] we note that many factors have been considered in the cases to be relevant in resolving the issue. *See, e.g.,* Wright, Miller, & Cooper, FEDERAL PRACTICE AND PROCEDURE § 3524 at 134–47 (2d ed. 1984). Indeed, this court, in *Hall v. Medical College of Ohio,* 742 F.2d 299 (6th Cir.1984), set out a checklist of factors to be considered in making this determination, and then concluded that the Medical College of Ohio at Toledo enjoyed eleventh amendment immunity. However, in *Hall* we recognized that the most important factor is whether a judgment, if obtained, would be paid out of the state treasury. *Id.* at 302 (quoting *Blake v. Kline,* 612 F.2d 718, 722 (3d Cir. 1979), *cert. denied,* 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1112 (1980)).

Certainly the Supreme Court has made clear that the most important factor if not the absolutely determinative factor, in resolving the applicability of the eleventh amendment to an action against a state board or agency is whether the judgment for retroactive monetary relief would be paid out of the state treasury. In *Ford Motor Co. v. Department of Treasury of the State of Indiana,* 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1985) (citations omitted), the Court said: "We have previously held that the nature of a suit as one against the state is to be determined by the essential nature and effect of the proceeding. And when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants.

We are of the opinion, therefore, that the present proceeding ... is a suit against the state." And more recently, in *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974), after quoting in part from the *Ford Motor* case as set out above, the Court said: "Thus the rule has evolved that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." *See also Quern v. Jordan,* 440 U.S. 332, 337, 99 S.Ct. 1139, 1143, 59 L.Ed. 2d 358 (1979); *Scheuer v. Rhodes,* 416 U.S. 232, 237–38, 94 S.Ct. 1683, 1686–87, 40 L.Ed.2d 90 (1974); *Martin v. University of Louisville,* 541 F.2d 1171, 1173–74 (6th Cir. 1976).

In *Ewing v. Board of Regents of the Univ. of Michigan,* 552 F.Supp. 881 (E.D. Mich.1982), the district court held that the Board of Regents of the University of Michigan is, as an arm of the state, immune under the eleventh amendment from suit in federal district court to recover retroactive monetary relief.[9] In reaching this decision, the district court pointed to several relevant factors. It relied, in part, as heretofore pointed out, on the proposition that a judgment against the Board would be paid out of the state treasury. It also noted that the Michigan constitution, article 8, section 4, provides that the legislature shall appropriate funds to maintain the University and that the legislature shall annually be given an accounting of income and expenditures. The district court also pointed out that the Michigan courts have held that the University is a department of the state government created by the state constitution to carry out state functions and that, under *Auditor General v. Regents,* 83 Mich. 467, 47 N.W. 440 (1890), the property held by the Board is held in trust in its

---

8. The eleventh amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), and subsequent cases held that the amendment applies to suits in federal court filed by a state's own citizens.

9. There was no appeal from the district court's decision on this issue. The district court, in a later opinion, 559 F.Supp. 791 (E.D.Mich.1983), held that plaintiff was not entitled to injunctive relief. The court of appeals reversed. 742 F.2d 913 (6th Cir.1984). The Supreme Court reversed the court of appeals. 474 U.S. 214, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985).

corporate capacity as the public property of the State of Michigan. The district court also noted that, in three unreported opinions, the United States District Court for the Eastern District of Michigan had held that the Board is entitled to eleventh amendment immunity.[10] *Id.* at 883.

We have set out the relevant state law as to the relation of the Board of Regents to the State of Michigan and have set out the federal law as to the standard to be applied in determining whether the Board is an arm of the state to which the eleventh amendment applies. These are subsidiary legal propositions on the basis of which we must resolve the ultimate legal question, that is, whether the Board of Regents is entitled to eleventh amendment immunity under the doctrine as expounded in *Ford Motor Co., Edelman,* and *Hall v. Medical College of Ohio.* We conclude that the eleventh amendment does apply and the Board is entitled to claim this immunity unless it has been waived.

## B. Waiver of eleventh amendment defense

Plaintiff argues that, even if the eleventh amendment would otherwise apply and would undercut the jurisdiction of the federal district court, the Board has waived this defense and has effectively consented to being sued in the district court by removal of the case from the state court of claims to the district court and by failing to raise the defense of lack of jurisdiction until it filed its supplemental brief in this court at the invitation of this court. We disagree.

It is clear that a court of appeals may *sua sponte* raise the issue of lack of jurisdiction because of the applicability of the eleventh amendment. Wright, Miller, & Cooper, FEDERAL PRACTICE AND PROCEDURE § 3524 at 168–70 (2d ed. 1984). Moreover, a state defendant may raise the defense for the first time on appeal. In *Ford Motor Co.,* Ford Motor sued in federal court in Indiana to recover a refund of state income taxes, contending that the tax was collected in violation of the federal constitution. The district court denied recovery and the court of appeals affirmed. The Supreme Court granted *certiorari* on Ford Motor's assertion that the court of appeals committed error in deciding a question of local law in conflict with an applicable decision of the highest state court in Indiana. In spite of its having granted *certiorari* on this basis, the Supreme Court said: "As we conclude that petitioner's [Ford Motor's] action could not be maintained in the federal court, we do not decide the merits of the issue." *Ford Motor Co.,* 323 U.S. at 462, 65 S.Ct. at 349. The Court then proceeded to hold that the eleventh amendment constituted a bar to Ford Motor's suit. In answer to Ford Motor's waiver argument, the Court stated:

It remains to be considered whether the attorney general for the State of Indiana in his conduct of the present proceeding has waived the state's immunity from suit. The state attorney general is authorized to represent the state in actions brought under the Indiana refund statute. He appeared in the federal District Court and the Circuit Court of Appeals and defended the suit on the merits. The objection to petitioner's suit as a violation of the Eleventh Amendment was first made and argued by Indiana in this Court. This was in time, however. The Eleventh Amendment declares a policy and sets forth an explicit limitation on federal judicial power of such compelling force that this Court will consider the issue arising under this Amendment in this case even though urged for the first time in this Court.

*Id.* at 466–67, 65 S.Ct. at 351–52.

Similarly, in *Edelman v. Jordan,* the Court, quoting the above language from *Ford Motor,* held that the eleventh amendment defense "partakes of the nature of a jurisdictional bar so that it need not be raised in the trial court." 415 U.S. at 678, 94 S.Ct. at 1363. This court held in *Allin-*

---

10. *Marwil v. Board of Regents,* No. 79–73331, slip op. at 5–6 (E.D.Mich. July 3, 1980) (Pratt, J.); *Reiner v. Bidlack,* No. 74–72922, slip op. at 9, 19–21 (E.D.Mich. Sept. 13, 1978) (Guy, J.); *Casad v. Regents of the Univ. of Michigan,* No. 80–74793 (E.D.Mich. July 30, 1982) (Guy, J.).

*der v. State of Ohio,* 808 F.2d 1180, 1184 (6th Cir.1987) (citations omitted): "The [eleventh amendment] defense may be raised for the first time on appeal, and a state's appearance and offer of defenses on the merits is no bar; the defense is jurisdictional and may be raised at any stage of the proceedings." It would be anomalous, to put it mildly, to hold that, while the question of eleventh amendment immunity may be raised for the first time (and even *sua sponte*) in this court of appeals, the immunity has been waived by the Board's having removed the case to federal district court and by its failure initially to assert the immunity question on this appeal. ·

■ Plaintiff, in contending the Board waived its eleventh amendment defense, relies on *Gallagher v. Continental Ins. Co.,* 502 F.2d 827 (10th Cir.1974). In that case, plaintiffs, citizens of Colorado, brought a class action in state court against contractors and their sureties, the State of Colorado, and the United States to recover money for the treasuries of Colorado and the United States. The action grew out of construction of a multimillion dollar tunnel for an interstate highway. All defendants, including Colorado, joined in a petition to remove to federal court. The plaintiffs then moved to remand to state court, contending that, under the eleventh amendment, the federal court had no jurisdiction. The district court denied the motion and then dismissed the action on the ground that plaintiffs did not have standing. The court of appeals affirmed, holding, *inter alia,* that Colorado had waived its eleventh amendment immunity. However, in so holding, the court made clear that it was doing so not only because Colorado had, in the district court, resisted the motion to remand to state court but also because, on appeal, where it was represented by its Attorney General whose authority to take such action was not questioned, Colorado reasserted its position that the appeals court should accept jurisdiction and resolve the appeal on its merits. *Id.* at 830. In the instant case, on the contrary, the Board of Regents asserts that this court has no jurisdiction over it because the eleventh amendment constitutes a bar.

We therefore conclude that the Board of Regents has not waived its eleventh amendment immunity.

## III

Plaintiff has represented to this court that if we should determine that, under the eleventh amendment, we have no jurisdiction, this court should remand to the district court with direction to remand to the state court of claims. The Board of Regents has not opposed this proposal. Since there is no opposition to such a remand to state court, we need not decide whether plaintiff is otherwise entitled to it. We also indicate no opinion on the question whether the state court of claims would have jurisdiction with respect to plaintiff's asserted claims under 42 U.S.C. section 1983 and other federal statutes on which plaintiff relies.

The judgment of the district court is therefore VACATED and the case is REMANDED to the district court with direction to remand to the Michigan Court of Claims from which it was removed.