**UNITED STATES of America, Plaintiff,**

v.

**CITY OF MENOMINEE, MICHIGAN; State of Michigan, and Menominee Paper Company, Inc., Defendants.**

Nos. M88–107 CA, M88–108 CA.

United States District Court, W.D. Michigan, N.D.

Oct. 26, 1989.

Thomas J. Gezon, Asst. U.S. Atty., John A. Smietanka, U.S. Atty., Grand Rapids, Mich., Daniel Jacobs, Peter W. Colby, U.S. Dept. of Justice, Land & Natural Resources Div., Environmental Enforcement Section, Washington, D.C., Nicholas Bollo, Assoc. Reg. Counsel, U.S.E.P.A., Region V, Chicago, Ill., James S. Brady, Miller, Johnson, Snell & Cummiskey, Grand Rapids, Mich., and David Hindin, U.S.E.P.A., Enforcement & Compliance Monitoring Office, Washington, D.C., for the U.S.

Stewart H. Freeman, Asst. Atty. Gen., Frank J. Kelley, Atty. Gen., Environmental Protection Div. and Corrections Div., and David M. Gadaleto, Asst. Atty. Gen., Corrections Div., Lansing, Mich., for the State of Mich.

H.G. Sparrow, III and Claudia Rast, Detroit, Mich., for Menominee Paper Co.; L. Grant Selsor, Menominee, Mich., of counsel.

## OPINION

HILLMAN, Chief Judge.

These consolidated actions are brought by the United States through the Environmental Protection Agency (USEPA), against the City of Menominee, Michigan (City), the State of Michigan (Michigan), and the Menominee Paper Company (MPC). USEPA, City, and Michigan have apparently settled their respective disputes, and a proposed consent decree has been lodged. USEPA and MPC continue at loggerheads in the main action. MPC has filed a counterclaim against USEPA, and a cross-claim against Michigan.

USEPA's amended complaint seeks civil penalties and injunctive relief against MPC for alleged violations of MPC's 1973 Na-

tional Pollutant Discharge Elimination System (NPDES) permit issued under the Clean Water Act (CWA), 33 U.S.C. § 1251 *et seq.* The amended complaint seeks the same remedies for MPC's alleged violations of "pretreatment" regulations promulgated by USEPA under the CWA. The court has jurisdiction of the main action by virtue of the CWA's enforcement provisions, as well as the federal question statute. 33 U.S.C. § 1319(b); 28 U.S.C. § 1331.

MPC's amended countercomplaint and cross-complaint request a declaratory judgment that the 1973 permit and the pretreatment regulations were superseded by a 1979 consent judgment entered by the Menominee County Circuit Court.

The matter is before the court on seven motions, accompanied by exhaustive briefs, an extensive factual record, and the able arguments presented by counsel at the hearing held on July 12, 1989. The court will address three of these motions: USEPA's motion to dismiss MPC's counterclaim, Michigan's motion to dismiss MPC's cross-claim, and MPC's motion for summary judgment in the main action. The remaining motions are already moot, or are rendered moot by the court's disposition of the three listed motions.

## BACKGROUND

Two recent Sixth Circuit cases provide general background on the CWA and its NPDES permit program and pretreatment regulations at issue here. *See Armco, Inc. v. USEPA,* 869 F.2d 975, 977–78 (6th Cir. 1989); *Nat'l Wildlife Federation v. Consumers Power Co.,* 862 F.2d 580, 582–83 (6th Cir.1988). In brief, the CWA as a general proposition prohibits navigable water pollution of any kind. 33 U.S.C. § 1311(a). The CWA defines pollution in terms of "effluent limitations" set forth in USEPA regulations. 33 U.S.C. §§ 1311(b), 1314(b).

The NPDES permit program provides an exception to the CWA's general pollution prohibition, allowing those with permits to discharge wastewater, within proscribed effluent limitations, directly into navigable water. 33 U.S.C. § 1342. The CWA recognizes two classes of direct dischargers: publicly owned treatment works (POTW), and point sources other than POTW's. 33 U.S.C. § 1311(b).

The CWA also recognizes a class of indirect dischargers, who send wastewater to a POTW for treatment before it is discharged directly to navigable waters by the POTW. Unlike direct dischargers, indirect dischargers need not obtain NPDES permits, but they must pretreat their wastewater to meet USEPA effluent limitations before the wastewater passes through the POTW. 33 U.S.C. § 1317(b).

USEPA may issue, administer, and enforce NPDES permits itself, or it may delegate much of that responsibility to the several states. 33 U.S.C. § 1342. In states like Michigan where delegation has occurred, the state assumes primary responsibility for NPDES permit issuance. Even in delegation states, however, USEPA retains final authority to review state-issued permits to ensure their compliance with the CWA's guidelines and requirements. 33 U.S.C. §§ 1342(b)–(e); *Ford Motor Co. v. USEPA,* 567 F.2d 661, 664, 669–72 (6th Cir.1977).

To secure USEPA's review authority in delegation states, the state must notify USEPA of every action related to the permit, and forward to USEPA a copy of new or modified permits the state proposes to issue. 33 U.S.C. § 1342(d)(1). Within 90 days of the date of transmittal of the proposed permit, USEPA may object in writing to the issuance of the permit as being outside the CWA. USEPA must explain the basis of its objection, and the objection must contain a statement of the effluent limitations and conditions the permit would include if it were issued by USEPA. If USEPA objects in a timely and sufficient manner, the state may not issue the permit. 33 U.S.C. § 1342(d)(2)(B).

Once USEPA objects to the proposed permit, the state may, within certain time limitations, request a public hearing on the objection, or submit a revised permit for USEPA review. If the state does not exercise these options, or if the state and USEPA reach impasse, exclusive permit is-

suance authority passes to USEPA. 33 U.S.C. § 1342(d)(4); 40 C.F.R. § 123.12(g) (1979); *Champion Internat'l Corp. v. USEPA*, 648 F.Supp. 1390, 1399 (W.D.N.C. 1986), *vacated on other grounds*, 850 F.2d 182 (4th Cir.1988).

If a state or USEPA properly issues an NPDES permit, the permit continues in force unless revoked, modified, or suspended. The usual life of a permit is five years. If a permittee applies for a new permit, or for modification of an existing permit, before the permit's expiration, the effluent limitations, terms and conditions of the existing permit remain in effect until issuance of a new or modified permit. 40 C.F.R. § 122.12 (1979).

MPC manufactures paper and paper products. It owns and operates a recycling plant in Menominee that includes a wastewater facility. The plant discharges effluent into the Menominee River just above the river's confluence with the Green Bay. MPC also discharges effluent into a separate treatment facility owned and operated by City. The parties agree that MPC is an indirect discharger into a POTW ordinarily subject to pretreatment regulations, and that MPC and City are direct dischargers subject to the NPDES permit program.

MPC bought its plant from the American Can Company in 1973. At that time MPC also acquired American Can's NPDES permit. The permit prescribes limitations and conditions, effective June 30, 1975, on the amount and concentration of various substances the holder may discharge into navigable water as part of the plant's effluent. The 1973 permit does not authorize discharge into City's POTW. City's NPDES permit became effective July 21, 1981.

USEPA's present enforcement action alleges that from August 1984 to November 1987 MPC repeatedly violated the limitations and conditions of the 1973 permit. The action also alleges that from July 1983 to September 1985, and again from March 1988 to August 1988, MPC consistently violated USEPA's pretreatment regulations.

The 1973 permit expired by its own terms on June 30, 1978. Around 1975, MPC applied for modification of its permit, thus extending the 1973 permit's terms beyond its expiration. MPC contended that American Can's permit was no longer appropriate, because MPC greatly expanded production at the plant and used different materials and manufacturing processes than its predecessor. Michigan did not act immediately on the modification application.

Instead, in May 1978 Michigan filed an enforcement suit against MPC in Menominee County Circuit Court, alleging violations of the 1973 permit. MPC and Michigan settled their differences in early 1979, and the court entered a consent judgment on June 20, 1979. MPC paid Michigan $85,000 in liquidated damages, without admitting any permit violations. USEPA was not a party to this action.

The consent judgment incorporated by reference a draft NPDES permit that Michigan proposed to replace the existing 1973 permit. This 1979 draft permit set forth different effluent limitations than the 1973 permit, and for the first time authorized MPC to discharge wastewater to City's POTW. The 1979 permit expired by its terms on March 31, 1981.

The consent judgment states that "the parties agree to be bound to the provisions of this consent judgment including without limitation the provisions of [the 1979 permit], notwithstanding the fact that the U.S. Environmental Protection Agency, a nonparty to this cause, may have or claim certain rights or duties with respect to said Permit...." The court retained jurisdiction of the matter.

After the court entered its consent judgment, Michigan forwarded the proposed 1979 permit to USEPA for its review, in accordance with the CWA and the parties' settlement discussions. USEPA responded to Michigan by letter dated October 2, 1979, and signed by the Director of USEPA's Enforcement Division. The letter is captioned "Approval of NPDES Permits for Issuance." It states that permit applications referred to on an attached list are approved "provided any modifications, if shown on the attachment, are incorporated in the applicable permit."

The attachment referring to MPC reads as follows:

> The draft permit cannot be approved by EPA nor issued for this industrial discharger under the Section 301(i)(2) variance until the 301(i)(1) variance for the City of Menominee POTW has been approved. The POTW permit has yet to be drafted and public noticed with all presently applicable provisions, most important of which are a complete schedule of compliance with *fixed dates* and a final operational date to be *on or before July 1, 1983*. The Menominee Paper Company permit requires the same operational date and any other interim dates with reference to the completion of all necessary tap-on facilities and other requirements.

Michigan did not request a public hearing upon receipt of USEPA's letter, nor did it revise the proposed 1979 permit and resubmit it to USEPA. In September 1981, six months after the expiration of the 1979 proposed permit, MPC applied to USEPA for a new NPDES permit. USEPA apparently did nothing, taking no action until the late 1980s, when it reviewed yet another state-proposed MPC permit. This latter permit, effective August 28, 1989, now governs MPC's wastewater operations.

Returning to the 1979 permit, MPC entered an operating agreement with City under which it paid substantial sums to City to discharge its wastewater through City's POTW. On October 11, 1979, November 21, 1979, April 29, 1980, December 10, 1980, August 10, 1981, and October 28, 1981, Michigan issued administrative notices to MPC regarding noncompliance with both the 1973 permit and 1979 consent judgment. Michigan has not taken any further enforcement action.

MPC maintains that it has always assumed in good faith that its activities were governed by the 1979 permit. There is little doubt that if USEPA did not know that MPC and Michigan were operating through at least the mid–1980's under the 1979 permit, it should have. USEPA nevertheless contends that, as a matter of law, the 1973 permit controls in its enforcement action. The court will take up these issues in its discussion of the main action.

## COUNTERCLAIM AND CROSS–CLAIM

■ First, with respect to MPC's counterclaim against USEPA and cross-claim against Michigan, this court lacks jurisdiction. Taking the counterclaim first, MPC bears the burden of establishing subject matter jurisdiction once its existence has been challenged under Fed.R.Civ.P. 12(b)(1). *Thomson v. Gaskill,* 315 U.S. 442, 445–46, 62 S.Ct. 673, 674–75, 86 L.Ed. 951 (1942). The amended counter-complaint, however, does not recite any statutory or other jurisdictional basis, in violation of Rule 8(a)(1). This is despite the fact that "any counterclaim in an action brought by the United States must show the authority by which the claim against the United States may be maintained in order for the court to be able to exercise its jurisdiction." 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1207 (1969) (citing *United States v. Shaw,* 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888 (1940)).

■ The amended counter-complaint does refer to the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202. This purely procedural statute does not act as a substantive grant of jurisdiction. *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671–74, 70 S.Ct. 876, 878–80, 94 L.Ed. 1194 (1950).

In its brief opposing USEPA's motion to dismiss, MPC asserts that jurisdiction of the counterclaim exists "under the same circumstances as those alleged in [USEPA's] complaint." The court reads this ambiguous statement in two ways. First, MPC may mean to assert federal question jurisdiction under 28 U.S.C. § 1331, because the counterclaim, like USEPA's claims in the main action, "arises under" the CWA.

■ Federal question jurisdiction does not exist, however, where the alleged federal claim lacks any legal substance. *In re: Bendectin Litigation,* 857 F.2d 290, 300 (6th Cir.1988), *cert. denied sub nom. Hoffman v. Merrell Dow Pharmaceuti-*

cals, Inc., —— U.S. ——, 109 S.Ct. 788, 102 L.Ed.2d 779 (1989). Here, the CWA does not even arguably support MPC's claim against USEPA.

First of all, the CWA provision cited by MPC, 33 U.S.C. § 1319(b), only vests the district court with jurisdiction to hear enforcement actions brought by the USEPA Administrator. A second possible source of judicial review in the CWA, 33 U.S.C. § 1369(b), confers subject matter jurisdiction only upon the courts of appeals. Finally, MPC's counterclaim cannot qualify as an arguably plausible citizen suit under 33 U.S.C. § 1365(a)(2), because MPC has not pleaded compliance with the jurisdictional notice requirement of 33 U.S.C. § 1365(b)(2). *See Walls v. Waste Resource Corp.*, 761 F.2d 311, 316–17 (6th Cir.1985).

▆▆▆ MPC's brief contains some discussion of the Administrative Procedure Act (APA) and its waiver of sovereign immunity, 5 U.S.C. § 702. While it may be that USEPA could not assert sovereign immunity on the counterclaim, this does not relieve MPC from establishing a jurisdictional basis. The APA on its own does not confer federal question or any other type of jurisdiction. *See, e.g., Federal Nat'l Mortgage Ass'n v. LeCrone*, 868 F.2d 190, 193 (6th Cir.1989).

▆▆▆ MPC's assertion that jurisdiction exists under the same circumstances as those alleged by USEPA in the main action may have an alternative meaning. MPC may mean to invoke this court's ancillary, rather than its federal question, jurisdiction. This is because the court may exercise ancillary jurisdiction of a compulsory counterclaim regardless of whether the counterclaim rests upon an independent jurisdictional basis. *See generally* 6 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1414 (1971 & Supp.1989).

Nevertheless, MPC does not in fact assert that its counterclaim is compulsory and within the ancillary jurisdiction of the court. None of MPC's papers contain the words "ancillary jurisdiction" or "compulsory counterclaim." The court has no duty to invent a jurisdictional statement for MPC not spelled out in its counterclaim.

*Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir.1975) (per curiam). Rather, under these circumstances, the court's duty is to dismiss the amended counter-complaint. *Clark*, 518 F.2d at 1169; *Shelter Mutual Ins. Co. v. Public Water Supply Dist.*, 747 F.2d 1195, 1197 (8th Cir.1984).

Accordingly, the court will grant USEPA's Rule 12(b)(1) motion and dismiss the counterclaim for lack of subject matter jurisdiction. As an alternative basis of dismissal, for the following reasons the court will also grant USEPA's motion under Rule 12(b)(6).

The counterclaim in essence seeks declaratory relief based upon alleged misconduct of USEPA analagous to or derivative of the affirmative defenses of estoppel, illegality, laches, waiver, or other matter constituting an avoidance, as listed in Rule 8(c). *See Ford Motor Co. v. Transport Indemnity Co.*, 795 F.2d 538, 546 (6th Cir.1986). The court will therefore dismiss the request for declaratory judgment, and treat the counterclaim as a statement of affirmative defenses rather than a statement upon which independent relief may be granted. *See generally* 5 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1275 (1969 & Supp.1989). MPC is not prejudiced by this treatment of its counterclaim, because the court's disposition of the summary judgment motion in the main action will address the issues upon which MPC seeks declaratory relief.

▆▆▆ MPC's cross-claim against Michigan suffers from many of the same defects as its counterclaim against USEPA. In addition, the Eleventh Amendment to the United States Constitution bars jurisdiction of the cross-claim. *Abick v. State of Michigan*, 803 F.2d 874, 876–77 (6th Cir.1986).

MPC argues that Michigan waived its Eleventh Amendment immunity by participating in this case on the merits up to this point without raising the immunity issue. I disagree. "[A] state's appearance and offer of defenses on the merits is no bar; the [Eleventh Amendment] defense is jurisdictional and may be raised at any stage of

the proceedings." *Estate of Ritter v. University of Michigan*, 851 F.2d 846, 852 (6th Cir.1988). This principle was well-established at the time MPC filed its cross claim here. *See Edelman v. Jordan*, 415 U.S. 651, 677–78, 94 S.Ct. 1347, 1362–63, 39 L.Ed.2d 662 (1974); *Allinder v. State of Ohio*, 808 F.2d 1180, 1184 (6th Cir.), *appeal dismissed*, 481 U.S. 1065, 107 S.Ct. 2455, 95 L.Ed.2d 865 (1987).

■ Michigan has asked the court to order MPC to pay its costs and attorney's fees incurred in defending against the cross-claim. Under Fed.R.Civ.P. 11, the court may sanction MPC and its attorney if a reasonable inquiry discloses that the cross-claim and opposition brief to Michigan's Rule 12(b)(1) motion were not warranted by existing law or a good faith argument for the extension, modification or reversal of existing law. *Herron v. Jupiter Transportation Co.*, 858 F.2d 332, 335 (6th Cir.1988).

There is no doubt that MPC's filing of the cross-claim, and subsequent defense of its filing in its opposition to Michigan's motion to dismiss, caused Michigan to incur costs and attorney's fees. MPC's conduct was not warranted by existing Eleventh Amendment law, and its reply brief does not contain any argument for the extension, modification or reversal of the governing authorities cited by the court. Under these circumstances, it is difficult to see how MPC or its attorney could have made reasonable legal inquiry about the viability of the cross-claim.

Nevertheless, MPC has a right to be heard on this issue. The court will order Michigan to submit a statement of costs and attorney's fees incurred in defending against the cross-claim. Failure to timely submit this statement will be deemed a waiver of Michigan's Rule 11 request. MPC may respond to Michigan's statement within the time allowed by the court, and the response may raise any pertinent defense against the imposition of Rule 11 sanctions. The court will then enter its findings of fact and conclusions of law on the sanctions question. At present, the court will dismiss the cross-claim.

## MAIN ACTION

The court may grant MPC's motion for summary judgment in USEPA's enforcement action only if the pleadings, depositions, interrogatory answers, admissions and affidavits on file show that there is no genuine issue of material fact, and that MPC is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In approaching the motion, the court must view the record in the light most favorable to USEPA, giving USEPA the benefit of all reasonable inferences. *Stratmore v. Goodbody*, 866 F.2d 189, 191 (6th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 2065, 104 L.Ed.2d 630 (1989). Summary judgment is not favored on important and complex issues. *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

■ MPC's self-described principal argument for summary judgment runs along the following lines. MPC concedes, as it must, that if USEPA properly objected to issuance of the 1979 permit, that permit never took effect, and the terms of the 1973 permit, which were never superseded by another valid permit, remained in force during the period of violations alleged in USEPA's amended complaint. MPC vigorously contends, however, that USEPA's October 2, 1979 letter to Michigan did not raise a timely and sufficient objection to issuance of the 1979 permit within the meaning of 33 U.S.C. § 1342(d)(2)(B). MPC further contends that USEPA waived any objections within the meaning of 33 U.S.C. § 1342(d)(3). Therefore, according to the argument, the 1979 permit superseded the 1973 permit, and USEPA cannot base this enforcement action on violations of the 1973 permit.

MPC's attack on the October 2, 1979 letter has three parts. First, MPC argues that the letter is not an objection. Second, if the letter is an objection, MPC contends that it was untimely. MPC finally argues that the letter's contents do not meet the substantive requirements of section 1342(d)(2)(B). The court finds this three-prong attack unpersuasive.

USEPA's October 2, 1979 letter qualifies as an "objection" within the statute. The essence of objection is disapproval or opposition. The letter's first page, captioned "Approval of NPDES Permits for Issuance," may well be fairly characterized, as MPC suggests, as a "conditional approval." Nevertheless, implicit in a conditional approval is the idea that until the condition is met the matter is opposed or disapproved, or in other words, objected to.

Here, despite MPC's assertion to the contrary, the condition stated on the letter's first page was never fulfilled. The modifications shown on the letter's attachment were never incorporated in the 1979 permit. The record shows that the 1979 permit was never redrafted or revised in any way. Moreover, MPC's argument that USEPA's condition was met, and therefore the 1979 permit was issued, when City's NPDES permit took effect on July 21, 1981, makes no logical sense. The 1979 permit expired on March 31, 1981. How could USEPA or anyone else issue an already expired permit? The court cannot hold as a matter of law that USEPA approved such issuance.

While the first page of the October 2, 1979 letter qualifies as an objection standing alone, inspection of the attachment referring to MPC removes all doubt about the matter. The first page is a form letter referring in general terms to a lengthy list of proposed permits. The attachment specifically addresses MPC's proposed 1979 permit. The law prefers specific to general references as statements of intent. *Cf. Simpson v. United States*, 435 U.S. 6, 15–16, 98 S.Ct. 909, 914–15, 55 L.Ed.2d 70 (1978) (construction of criminal statutes). The attachment states "the draft permit cannot be approved by EPA nor issued for this industrial discharger" until approval of City's permit. USEPA's intent to object to issuance of the 1979 permit could not be more plain.

 Turning to the second prong of MPC's argument, the timeliness of USEPA's objection, the court will assume that MPC correctly maintains that USEPA carries the burden of proof on this issue. Under section 1342(d)(2)(B), USEPA's ob-

jection to a state-proposed NPDES permit is untimely if not made within 90 days of the date of transmittal of the proposed permit by the state. Counting backwards 90 days from the October 2, 1979 objection letter yields the date July 4, 1979.

Accordingly, to satisfy the statutory limitation period USEPA must show that Michigan transmitted the 1979 permit to USEPA on or after July 4, 1979. In order to survive MPC's motion USEPA's showing must set forth specific facts that could convince a reasonable jury its objection letter was transmitted within the 90–day statutory period. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–27, 106 S.Ct. 2548, 2552–55, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–52, 106 S.Ct. 2505, 2509–12, 91 L.Ed.2d 202 (1986).

USEPA has met its burden. The affidavit of Almo H. Manzardo, chief of USEPA Region V's Water Division Permit Section, declares flatly that "[o]n July 25, 1979, the Michigan Department of Natural Resources (MDNR) submitted to EPA a proposed permit attached to a consent judgment signed by Michigan and the Menominee Paper Company. A true and correct copy of the letter from the State to EPA submitting the proposed permit for comment is attached as Exhibit C."

USEPA's Exhibit C is indeed a letter to Manzardo from Michigan's Karl Zollner, Chief of MDNR's Water Quality Division Engineering & Technical Services Section. The letter, dated July 25, 1979, begins "[e]nclosed are copies of the proposed permit, public notice, fact sheet, application, and briefing memo for the above mentioned facility." The facility referred to is MPC's, and the proposed 1979 permit is identified by number.

A reasonable jury could certainly conclude from USEPA's showing that Michigan transmitted the 1979 permit to USEPA on July 25, 1979. Of course, the jury might instead agree that certain circumstantial evidence pointed to by MPC leads through a series of inferences to the conclusion that Michigan transmitted the 1979 permit before July 4, 1979. This merely

illustrates that a genuine issue of fact exists concerning the date that Michigan transmitted the 1979 permit to USEPA, and that MPC is not entitled to judgment as a matter of law on the timeliness question.

■ MPC finally contests the legal sufficiency of USEPA's October 2, 1979 objection letter. Under section 1342(d)(2)(B), USEPA's objection must state why USEPA objects to issuance of the permit as outside the guidelines and requirements of the CWA. The objection also must contain a statement of the effluent limitations and conditions which USEPA would include in the permit if it were issued by USEPA itself. MPC argues that the October 2, 1979 letter fails to satisfy these two statutory provisions.

I disagree. The October 2, 1979 objection clearly states that the 1979 permit cannot issue "under the Section 301(i)(2) variance until the 301(i)(1) variance for the City of Menominee POTW has been approved." USEPA's objection thus rests squarely, whether correctly or not, upon the requirements of 33 U.S.C. § 1311(i)(2)(A), rather than some ad hoc policy determination regarding MPC's discharges. That is all section 1342(d)(2)(B) requires. *Ford Motor Co.*, 567 F.2d at 669–72.

Although USEPA is held to a high standard of articulation in stating the legal basis of its objections to state-proposed permits, *id.* at 669, in this case the court is satisfied that USEPA was not required to set forth the text or an interpretation of section 1311(i)(2)(A) in its October 2, 1979 letter. Michigan was perfectly capable of reading the statute for itself.

■ Similarly, the October 2, 1979 objection adequately describes the effluent limitations and conditions which USEPA would include were USEPA to issue the permit. The CWA defines the term "effluent limitation" to include "schedules of compliance." 33 U.S.C. § 1362(11). The CWA in turn defines "schedule of compliance" as a "schedule of remedial measures including an enforceable sequence of actions or operations leading to compliance

with [a] . . . limitation, prohibition, or standard." 33 U.S.C. § 1362(17).

The October 2, 1979 letter states that the 1979 permit "requires the same operational date and any other interim dates" as the "complete schedule of compliance" to be set forth in City's POTW permit when drafted. This language fully satisfies the statute by setting forth USEPA's view that the 1979 permit needed to include effluent limitations and conditions containing a sequence of operations leading to compliance with 33 U.S.C. § 1311(i).

MPC initially argued that the October 2, 1979 letter was also legally insufficient under section 1342(d)(2)(B) because it was signed by USEPA's Enforcement Division Director rather than the USEPA Administrator. MPC has since prudently retreated from this position. *See* 40 C.F.R. §§ 122.-60(b) and (h) (1979).

■ MPC finally challenges the October 2, 1979 letter's legal sufficiency on grounds that USEPA did not notify MPC of its objection. Governing law, however, requires USEPA to give notice and hearing of an objection only to the state that submits the proposed permit. USEPA notice and hearing to permittees like MPC is discretionary. 40 C.F.R. §§ 123.23(c) and (d) (1979). There is nothing inherently unfair about this regulatory scheme, which merely recognizes that the primary permit authority in delegation states is the state, not USEPA. *Ford Motor Co.*, 567 F.2d at 669. Here, MPC should have looked to Michigan, not USEPA, for any notification required by Michigan law regarding the status of the 1979 permit following USEPA's objection.

■ MPC also contends that USEPA waived its objection to issuance of the 1979 permit under 33 U.S.C. § 1342(d)(3). MPC bases its waiver argument on USEPA's inaction after sending Michigan the October 2, 1979 objection letter. Section 1342(d)(3), however, concerns only USEPA's waiver of the power to object to state-proposed NPDES permits before issuance, not to waiver by subsequent conduct of objections already lodged by USEPA. *See EPA v. California ex rel. State Water*

*Resources Control Bd.*, 426 U.S. 200, 208, 96 S.Ct. 2022, 2026, 48 L.Ed.2d 578 (1976); *Aminoil U.S.A., Inc. v. California State Water Resources Control Bd.*, 674 F.2d 1227, 1229 n. 1 (9th Cir.1982); *Ford Motor Co.*, 567 F.2d at 676 n. 12 (Engel, J., dissenting).

Here, USEPA undertook to object to the 1979 permit, whether effectively or not, by sending Michigan the October 2, 1979 letter. Accordingly, the court finds no section 1342(d)(3) waiver of USEPA's objections.

In sum, as a matter of law USEPA validly objected to issuance of the 1979 permit, and its subsequent inaction did not waive the objection. The jury should decide whether or not the objection was timely. It follows that the court will deny MPC's motion for summary judgment based on MPC's self-styled principal argument.

Besides its attack upon the validity of USEPA's objection to the 1979 permit, and thus the viability of grounding the enforcement action on the 1973 permit, MPC pursues two other lines of argument. These assert that, even if the 1973 permit technically governs here, it would now be unfair or unwise for the court to allow USEPA to go forward with this action. The court concludes that these latter defenses likewise do not entitle MPC to summary judgment.

■■■■ MPC's fairness contentions rest upon three legal theories: waiver, equitable estoppel, and laches. MPC applies these theories alternatively to essentially the same factual allegations: that USEPA knew of MPC's and Michigan's assumption that the 1979 permit superseded the 1973 permit, that USEPA also knew of MPC's substantial detrimental change in position based upon its assumption, and that despite its knowledge USEPA waited from 1979 to 1988 to enforce its rights under the 1973 permit.

The court will assume the truth of MPC's allegations for purposes of this motion. The court will also assume, as MPC asserts, that USEPA was negligent in not straightening out the MPC permit situation, or filing an enforcement action based

on the 1973 permit, before 1988. Even with these assumptions, however, the court cannot grant summary judgment to MPC.

USEPA did not waive its right to bring this enforcement action. The waiver provision of 33 U.S.C. § 1342(d)(3), cited by MPC, addresses only USEPA's regulatory power to review state-proposed NPDES permits, not its sovereign power to enforce the CWA. The CWA's enforcement provisions do not mention waiver, 33 U.S.C. § 1319, and this court will not recognize waiver by implication. No matter how "abysmal" USEPA's failure to police MPC's discharges may have been between 1979 and 1988, and regardless of any "admissions" made by USEPA officials, "generally speaking public officers have no power or authority to waive the enforcement of the law on behalf of the public." *United States v. Amoco Oil Co.*, 580 F.Supp. 1042, 1050 (W.D.Mo.1984).

■■■■ Similarly, USEPA's alleged inattention and inaction in the past does not equitably estop it from prosecuting this suit. Litigants seeking to impose estoppel against the government carry a heavy burden, and courts are "very reluctant" to apply estoppel doctrines in such cases. *Reynolds v. Commissioner of Internal Revenue*, 861 F.2d 469, 474 (6th Cir.1988). This is especially so when the action upon which the opposing party asserts estoppel was taken by the government in its sovereign rather than proprietary role. *Housing Authority of Elliott County v. Bergland*, 749 F.2d 1184, 1190 (6th Cir.1984). At the very minimum, estoppel must rest upon affirmative misconduct of the government. *State Bank of Fraser v. United States*, 861 F.2d 954, 961 (6th Cir.1988).

No doubt exists that USEPA exercises sovereign rather than proprietary powers when enforcing the CWA. Moreover, the only USEPA misconduct identified by MPC in its brief is "indifference and inaction amounting to affirmative misconduct." This does not qualify as a sufficient allegation or demonstration of affirmative misconduct given MPC's heavy burden. *Bergland*, 749 F.2d at 1190. Mere inaction by

USEPA in the face of known NPDES permit violations is not affirmative misconduct upon which equitable estoppel will lie. *Amoco Oil Co.,* 580 F.Supp. at 1050. *Accord, United States v. Louisiana–Pacific Corp.,* 682 F.Supp. 1122, 1139–41 (D.Colo. 1987) (Clean Air Act).

■ An alternative basis exists for rejecting MPC's equitable estoppel defense. A private party cannot estop the government "without at least demonstrating that the traditional elements of an estoppel are present." *Heckler v. Community Health Services, Inc.,* 467 U.S. 51, 61, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984). One such traditional element is reasonable reliance on the government's actions. *See State Bank of Fraser,* 861 F.2d at 961.

Here, MPC has made no effort to show that it was reasonable in planning its discharges under the assumption that the 1979 permit had superseded the 1973 permit. Of course, MPC is charged with full knowledge of the applicable law. *Community Health Services,* 467 U.S. at 63–64, 104 S.Ct. at 2225–26. The record contains ample evidence demonstrating that MPC should have known about USEPA's possible objection to the 1979 permit, and the possible continuance of the limitations set forth in the 1973 permit.

First of all, MPC knew from its settlement discussions in the state litigation that USEPA could veto the proposed permit incorporated in the consent judgment. The language of the consent judgment itself, pointing out USEPA's non-involvement, reinforced this knowledge. Additionally, MPC official Donald Estebo admitted at deposition that he had seen at least the first page of USEPA's October 2, 1979 objection letter shortly after it was written.

Moreover, if MPC was so convinced that the 1979 permit controlled its activities throughout the period of violations alleged by USEPA, why did it submit a new permit application in September 1981 to USEPA rather than to Michigan, if not in implicit recognition that exclusive permit issuance authority had passed to USEPA after an impasse concerning the proposed 1979 permit? Finally, Michigan placed MPC on no-

tice throughout 1979, 1980, and 1981 that MPC was not in compliance with the 1973 permit as well as the 1979 consent judgment, thus suggesting that Michigan acknowledged the possible continuing relevance of the earlier permit conditions.

Under all these circumstances, MPC as a matter of law had a duty to make some inquiry whether its activities were in fact governed by the 1979 or 1973 permit. MPC is a sophisticated corporate player, represented by experienced counsel, heavily involved in activities that are pervasively regulated by both Michigan and USEPA. It is disingenuous for MPC to now assert, in its words, that it simply "assumed all was well" with the 1979 permit despite the signs that USEPA might insist on the continuing applicability of the 1973 permit.

■ No right exists to pollute our nation's waters. The burden is on the polluter to comply with the CWA, not on USEPA to ensure compliance. Accordingly, MPC's reliance on USEPA's failure to earlier assert its rights under the 1973 permit was not reasonable, and MPC cannot estop USEPA in the current action.

■ MPC's third fairness argument likewise fails. The laches doctrine does not bar the present enforcement action. The Supreme Court and the Sixth Circuit have identified "no exceptions to the rule that laches cannot defeat the government." *United States v. Weintraub,* 613 F.2d 612, 618 (6th Cir.1979), *cert. denied,* 447 U.S. 905, 100 S.Ct. 2987, 64 L.Ed.2d 854 (1980). This court is not in a position to do otherwise. The court notes that laches defenses were rejected in two cases similar to the present one. *Louisiana–Pacific Corp.,* 682 F.Supp. at 1138; *Amoco Oil Co.,* 580 F.2d 1050.

■ In addition to its arguments regarding USEPA's objection to the 1979 permit, and its fairness arguments, MPC sets forth two policy arguments based on the 1979 Menominee County Circuit Court consent judgment. In the first of these, MPC contends that the state-court judgment incorporating the 1979 permit collaterally estops USEPA from asserting the applicabili-

ty of the 1973 permit in the present action. Apparently, MPC means to argue that the consent judgment finally litigated the issue of appropriate effluent limitations, and "issued" the 1979 permit to supersede the 1973 permit. Once again, the court disagrees.

The Sixth Circuit has described an indistinguishable collateral estoppel argument as "border[ing] on the frivolous." *United States v. Ford Motor Co.*, 814 F.2d 1099, 1103 (6th Cir.) *cert. denied,* 484 U.S. 822, 108 S.Ct. 83, 98 L.Ed.2d 45 (1987) (Clean Air Act). As the *Ford Motor Co.* court pointed out, the preclusive effect of state court judgments in the pollution control arena is modified by the review authority accorded to USEPA by federal law. 814 F.2d at 1103.

Here, assuming the dubious proposition that the state court intended its judgment to set effluent limitations and "issue" an NPDES permit, the issuance could not take final effect unless USEPA failed to object to the proposed permit within 90 days after transmittal of the judgment. Because USEPA did object (assuming the objection was timely), the permit could not issue. 33 U.S.C. §§ 1342(d)(2) and (4). It follows that the portion of the judgment purporting to issue the permit never became final. Absent a final judgment, collateral estoppel does not apply. *See, e.g., Dyer v. Intera Corp.,* 870 F.2d 1063, 1066 (6th Cir.1989).

MPC's second policy-based argument asserts that the court should not allow this action to go forward for reasons of comity between state and federal governments. MPC correctly points out that the state court retains jurisdiction of Michigan's 1978–79 enforcement action, but this court does not see how the present action in any way interferes with or denigrates the state-court proceedings. NPDES permittees are subject to concurrent state and USEPA enforcement. 33 U.S.C. § 1319; *see generally United States v. ITT Rayonier, Inc.,* 627 F.2d 996, 1000–01 (9th Cir. 1980).

Here, Michigan brought an enforcement action against MPC in state court, alleging violations of the 1973 permit that occurred before 1979. In this case, USEPA has brought an enforcement action against MPC in federal court, alleging violations of the 1973 permit that occurred after 1983. I am satisfied that this sort of situation must have been within the contemplation of Congress and the President when they adopted the CWA's dual enforcement scheme, and also within the contemplation of Michigan when it agreed to participate in administration of the NPDES program. Accordingly, no serious comity or federalism problem exists.

### CONCLUSION

The accompanying order sets forth the court's rulings explained in this opinion. In accordance with Magistrate Scoville's order of September 15, 1988, the court will order a further scheduling conference.

### ORDER

In accordance with the opinion filed this date,

IT IS ORDERED that the United States of America's motion to dismiss Menominee Paper Company's counterclaim is granted, and the counterclaim is dismissed.

IT IS FURTHER ORDERED that the State of Michigan's motion to dismiss Menominee Paper Company's cross-claim is granted, and the cross-claim is dismissed.

IT IS FURTHER ORDERED that on or before November 10, 1989, the State of Michigan may file with the court and serve upon Menominee Paper Company a statement of costs and attorney's fees incurred in defending the cross-claim.

IT IS FURTHER ORDERED that on or before November 24, 1989, Menominee Paper Company may file with the court and serve upon the State of Michigan a response to Michigan's statement, including Menominee Paper Company's reasons, if any, why it should not be sanctioned under Fed.R.Civ.P. 11.

IT IS FURTHER ORDERED that Menominee Paper Company's motion for summary judgment on the United States of America's complaint is denied.

IT IS FURTHER ORDERED that all additional nondiscovery motions now pending are dismissed as moot.